AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Feb 15, 2024
OFFICE OF THE CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
THE APPLICATION OF THE UNITED STATES OF ) Case No. 2:24 CM 00011
AMERICA FOR AUTHORIZATION TO OBTAIN LOCATION )
DATA CONCERNING A CELLULAR TELEPHONE )
ASSIGNED CALL NUMBER (479) 629-0668 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the ____unknown____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution, Possession With Intent to Distribute Controlled Substances (methamphetamine) |
| 21 U.S.C. 846 | Conspiracy |

The application is based on these facts:

See Attached Affidavit of FBI SA Matthew Ferguson.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.
**30 days is intended to be from the termination of the collection of data.

*Matthew K. Ferguson*
Applicant's signature

FBI SA Matthew Ferguson
Printed name and title

Sworn to before me and signed in my presence.

Date: 2/15/24

*Charles E. Ford*
Judge's signature

City and state: Fort Smith, Arkansas

Hon. Mark E. Ford, U.S. Magistrate Judge
Printed name and title

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (479) 629-0668 (the "Target Cell Phone"), whose wireless service provider is VERIZON Wireless, a company headquartered at 11760 US Hwy 1, Suite 600, North Palm Beach, Florida 33480.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of VERIZON Wireless including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I.   Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five (45) days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of VERIZON Wireless, VERIZON Wireless is required to disclose the Location Information to the government. In addition, VERIZON Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with VERIZON Wireless's services at such intervals and times directed by the government. The government shall compensate VERIZON Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AUTHORIZATION TO OBTAIN LOCATION DATA CONCERNING A CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(479) 629-0668** | **UNDER SEAL** **AFFIDAVIT IN SUPPORT OF APPLICATION** |

I, Matthew Ferguson, Special Agent of the Federal Bureau of Investigation ("FBI") being duly sworn, depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed as a Special Agent with the FBI since September 2009. Prior to my employment with the FBI, I was employed as a Police Officer and Narcotics Officer by the City of North Little Rock, Arkansas Police Department from 2004 to 2009. I am currently assigned to the FBI Little Rock Division, Fort Smith Resident Agency where I am tasked with conducting criminal enterprise investigations. During my career as a Special Agent, I have been involved in a wide variety of investigative matters, including investigations targeting criminal enterprises involved in the unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. During the course of these investigations, I have authored and reviewed multiple Title III wire intercept affidavits, coordinated the execution of search and arrest warrants, conducted physical surveillance, participated in controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and communicated with other local and federal law enforcement officers regarding the manner in which drug distributors obtain, finance, store,

manufacture, transport, and distribute their illegal drugs. Through my training and experience I have become familiar with the manners in which illegal drugs are imported, distributed, and sold, as well as the methods used by drug dealers to disguise the source and nature of their profits.

2. I submit this affidavit in support of an application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), authorizing agents of the FBI to ascertain the physical location of a cellular telephone, including but not limited to data indicating the specific latitude and longitude of (or other precise location concerning) the cellular telephone (the "**REQUESTED INFORMATION**") [1], as described in Attachment B, for a period of 45 days. The assigned call number for the cellular telephone, as described in Attachment A, is **(479) 629-0668** (the "**TARGET DEVICE**"), a mobile cellular telephone whose service provider is VERIZON Wireless. I believe the current user of this device to be **WHITNEY LAXTON-CLAYBAUGH (LAXTON-CLAYBAUGH)**. Based on investigation to date, **LAXTON-CLAYBAUGH** is known to Affiant as a methamphetamine trafficker and distributor operating in the Fort Smith, Arkansas and surrounding areas. As further described below, I believe **LAXTON-CLAYBAUGH** is actively using the **TARGET DEVICE** in furtherance of violations of 21 U.S.C. §§ 841 and 846.

3. I believe the **TARGET DEVICE** is being used to coordinate and direct criminal conduct taking place within the Western District of Arkansas and is in the possession of **LAXTON-CLAYBAUGH**. Additionally, the FBI would receive the GPS pings in the Western District of Arkansas from VERIZON Wireless. Accordingly, this court is "a court of competent jurisdiction" to issue the requested warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the **TARGET DEVICE** at the start and end of any call.

Criminal Procedure 41, and has venue to issue the requested warrant under Federal Rule of Criminal Procedure 41(b)(4).

4. Based on the information contained below, I submit that probable cause exists to believe **LAXTON-CLAYBAUGH** and other individuals, known and unknown, have committed, and continue to commit, violations of 21 U.S.C. §§ 841 and 846. Further, probable cause exists to believe the **TARGET DEVICE** is being used by **LAXTON-CLAYBAUGH** to commit these violations and that the **REQUESTED INFORMATION** will lead to the location of **LAXTON-CLAYBAUGH**, as well as other relevant evidence.

5. I am familiar with the facts and circumstances of the investigation through my personal participation, from review of information received from a cooperating defendant, discussions with other law enforcement officers, and from my review of records and reports relating to the investigation. Since I am submitting this affidavit for the limited purpose of securing a warrant authorizing the acquisition of the **REQUESTED INFORMATION**, I have not included details of every aspect of the investigation.

## USE OF CELLULAR TELEPHONES BY DRUG TRAFFICKERS

6. Based on my training, experience, and participation in other drug trafficking investigations, I know drug traffickers:

    a. Use cellular telephones to facilitate their drug trafficking activities. Such telephones contain, among other things, the names and telephone numbers of criminal associates, text messages about criminal activity, and call details about telephone numbers that were called or received by the telephone;

b. Use cellular telephones to take photographs and videos which depict, among other things, their criminal activity, the accomplices involved in their criminal activity, and/or the possession of the fruits or instrumentalities of their criminal activity;

c. Use cellular telephones to conduct their illegal activity by contacting sources of supply, other distributors, brokers, and buyers. Cellular telephones are often used to schedule drug transactions and/or meetings to discuss potential or future drug transactions; and

d. Carry and maintain control of their cellular telephones at all times, including during drug transactions and during the storage of drug proceeds;

e. Often register their telephone numbers and communications accounts in fake or alias names in order to evade law enforcement detection;

f. Often change or "drop" telephone numbers in order to insulate themselves from their drug trafficking activities and to confuse investigators and evade law enforcement detection.

### PREVIOUS APPLICATIONS AND ISSUED SEARCH WARRANTS

7. On August 15, 2023, the Honorable Magistrate Judge Mark E. Ford issued a search warrant for Precision Location Data (Pings) for **the TARGET DEVICE** (Case 2:23-cm-00048-MEF). On September 26, 2023, the Honorable Magistrate Judge Mark E. Ford issued a second search warrant for Precision Location Data (Pings) for **the TARGET DEVICE** (Case 2:23-cm-00053-MEF). Data gathered based on the search warrants has assisted investigators with proving **LAXTON-CLAYBAUGH** is the user of that telephone number, uses the phone to coordinate and plan her drug trafficking and distribution activities and carries the phone with her on drug re-supply trips both within and outside of the Western District of Arkansas.

## USE OF CONFIDENTIAL SOURCES

8. Throughout the course of this investigation, Affiant and other investigators have utilized multiple Confidential Sources (CS) who have provided information and cooperation to law enforcement for various motivations. This Affidavit deals with information and cooperation of two CSs whose history and motivation are further described as follows:

   a. CS-1 is also cooperating in consideration for pending criminal charges in the State of Arkansas. CS-1 has provided information to investigators that has proven truthful and accurate and has been independently corroborated by investigators on multiple occasions. Affiant considers the information provided by CS-1 is reliable.

   b. CS-2 is cooperating in consideration for pending criminal charges in the State of Arkansas and monetary gain. CS-2 has provided information and assistance to investigators that has proven truthful and accurate and has been independently corroborated by investigators on multiple occasions. Affiant considers the information and assistance provided by CS-2 is reliable.

## STATEMENT OF PROBABLE CAUSE

9. Special Agents (SA) and Task Force Officers of the FBI's Fort Smith and Fayetteville Resident Agencies (RAs) and other law enforcement officers are investigating a Drug Trafficking Organization (DTO) in which **LAXTON-CLAYBAUGH** and others both known and yet unknown conspire to distribute large quantities of methamphetamine throughout the Western District of Arkansas. It is known through this investigation that **LAXTON-CLAYBAUGH** and other individuals involved in the DTO utilize cellular telephones to communicate and coordinate their drug trafficking activities.

10. In or about January 2024, Affiant interviewed CS-1, who provided the following information: CS-1 has known **LAXTON-CLAYBAUGH** for a long time and has obtained quantities of methamphetamine from **LAXTON-CLAYBAUGH** in the past. According to CS-1, **LAXTON-CLAYBAUGH** has continued to conduct her drug trafficking and distribution activities after she put her illegal activity on hold from November and December of 2023 because she went to "drug rehab" (in-patient drug rehabilitation). CS-1 recently spoke with Darryl Beasley, a Fort Smith based drug distributor who works closely with **LAXTON-CLAYBAUGH**. Beasley told CS-1 that **LAXTON-CLAYBAUGH** arranged for him to pick-up a large quantity of methamphetamine and fentanyl pills from **LAXTON-CLAYBAUGH's** drug supplier in Oklahoma City. Beasley brought the methamphetamine and fentanyl back to Fort Smith where he distributed it to his drug customers.

11. On or about February 9, 2024, CS-1 spoke with Beasley regarding obtaining a quantity of methamphetamine from him (on Affiant's behalf, as evidence in support of this investigation). Beasley told CS-1 that he "ran out" of methamphetamine but was planning to travel to Oklahoma City to obtain a re-supply of methamphetamine and would return late that night. Beasley agreed to provide a portion of that methamphetamine to CS-1 when he returned from Oklahoma City.

12. On or about February 9, 2024, CS-2 was contacted by **LAXTON-CLAYBAUGH** using the **TARGET DEVICE**. The two communicated in a series of text messages. During the conversation, **LAXTON-CLAYBAUGH** stated that she is trying to gather money to obtain a re-supply of methamphetamine and agreed to sell a portion of that methamphetamine to CS-2. The following are pertinent excerpts of that conversation:

**LAXTON-CLAYBAUGH** – "Was you wanting to do something soon"

**CS-2** – "O dam … Yes"

**LAXTON-CLAYBAUGH** – "Ok will u be willing to put half the money up front"

**CS-2** – "How much"

**LAXTON-CLAYBAUGH** – "1500 it will be 3 for 1 of them … If u are willing to do that I will need the 15 no later than 5 pm today … It will be back tonight somewhere around midnight"

**CS-2** – "Don't feel comfortable doing that,"

**LAXTON-CLAYBAUGH** – "Either way it won't be til midnight before its available … Depending on how much money I have to go is what will determine what I'll have. And it may be a Lil more that way"

13. Affiant believes this conversation and the information provided by CS-2 corroborates the information provided by CS-1 that **LAXTON-CLAYBAUGH** and her co-conspirators (including Beasley) are attempting to gather money to obtain a re-supply of methamphetamine from **LAXTON-CLAYBAUGH's** drug supplier. Based on my training and experience, Affiant knows when **LAXTON-CLAYBAUGH** asked if CS-2 would be willing to put "half the money up front" and then explained it was "3 for 1", she was asking for CS-2 to pay $1500 as a down payment for one pound of methamphetamine which she would sell to CS-2 for $3000. Further, Affiant knows $2500 to $3000 is the current approximate price for one pound of methamphetamine in the Fort Smith, Arkansas area. When **LAXTON-CLAYBAUGH** stated she needed "the 15 no later than 5 pm today" and that the methamphetamine would be "available" around "midnight", she (along with Beasley) was planning to travel from Fort Smith to Oklahoma City to obtain the re-supply of methamphetamine around 5pm and would not return to the Fort Smith area until late that night or early the next day.

14. On or about February 12, 2024, CS-1 stated Beasley had contacted him/her over the weekend on multiple occasions and was still attempting to gather money to obtain the re-supply of methamphetamine. Beasley told CS-2 he needed more money to make the trip. Affiant believes this means that Beasley and **LAXTON-CLAYBAUGH** have not made the methamphetamine re-supply trip and are still trying to gather money to obtain the load of methamphetamine.

15. Based on the information detailed herein, Affiant asserts there is probable cause to believe **LAXTON-CLAYBAUGH** is the user of the **TARGET DEVICE** and continues to use the **TARGET DEVICE** to communicate with co-conspirators, coordinate drug distribution activities and conduct ongoing criminal activities. Further, Affiant believes **LAXTON-CLAYBAUGH** carries the phone to locations where methamphetamine supplies are stored and uses the phone to arrange drug transactions with his drug customers. Affiant asserts a GPS/precision data location search warrant will assist investigators with identifying these locations and co-conspirators in order to understand the scope of the DTO, to gain a better understanding of **LAXTON-CLAYBAUGH's** involvement in the DTO, to identify co-conspirators and to conduct enforcement operations which will lead to prosecution of DTO members for the federal criminal violations detailed herein.

16. In my training and experience, I have learned that VERIZON Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking

technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

17. Based on my training and experience, I know that VERIZON Wireless can collect E-911 Phase II data about the location of the **TARGET DEVICE**, including by initiating a signal to determine the location of the **TARGET DEVICE** on VERIZON Wireless's network or with such other reference points as may be reasonably available.

18. Based on my training and experience, I know that VERIZON Wireless can collect cell-site data about the **TARGET DEVICE**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as VERIZON Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

20. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET DEVICE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

21. I further request that the Court direct VERIZON Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of VERIZON Wireless. I also request that the Court direct VERIZON Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with VERIZON Wireless's services at such intervals and times directed by the

government. The government shall reasonably compensate VERIZON Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

22. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET DEVICE** outside of daytime hours.

23. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

*Matthew K. Ferguson*
Matthew Ferguson, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 15 day of February 2024.

Hon. Mark E. Ford
UNITED STATES MAGISTRATE JUDGE

11